O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# SOUTHERN DIVISION

| | |
|---|---|
| JOSHUA GONZALEZ, <br><br> Plaintiff, <br><br> v. <br><br> CITY OF HUNTINGTON BEACH, <br><br> Defendants. | Case No. 8:18-CV-00953-DOC (DFMx) <br><br> ORDER RE: DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT [79] |

Before the Court is City of Newport Beach's ("Defendant" or "City") Motion for Summary Judgment ("Motion"). (Dkt. 79). The Court heard oral argument on June 8, 2021 at 7:30 AM. Having reviewed the moving papers submitted by the parties and their arguments, the Court **DENIES** the Motion.

## I. Background

### A. Facts[1]

In late 2016, Plaintiff Joshua Gonzalez lived in Sunset Beach, with his friend Shannon Cofell. Declaration of Plaintiff Joshua Gonzalez ("Plaintiff Decl.") (Dkt. 55-2) ¶ 2; Deposition of Joshua Gonzalez ("Plaintiff Depo.") (Dkt. 46-1), Ex. F at 18:22–19:9. Cofell's home is next to the residence of James York, Plaintiff's boyfriend, as well as Michael Scatufo's house. Plaintiff Decl. ¶ 66, Ex. A; Plaintiff Depo. at 32:5–33:9. Plaintiff normally stayed with Cofell in exchange for money and work around the house. Deposition of Shannon Cofell ("Cofell Depo.") (Dkt. 55-1), Ex. C at 13:13–24, 28:4–25. However, on weekends when Cofell had her children at her home, Plaintiff would stay with his boyfriend, York. Plaintiff Depo. at 18:22–19:9.

On November 1, 2016, the Huntington Beach Police Department ("HBPD") received a 911 call from Michael Scafuto ("Scafuto"), reporting that someone had trespassed on his backyard. Dispatch Report (Dkt. 46-1), Ex. A at 11; Plaintiff's Statement of Genuine Material Facts in Dispute ("SDF") (Dkt. 55-3) ¶ 1. Officers Jackson and Gonzales (collectively "the Officers") were then dispatched to the scene. *Id.*; Deposition of Officer Trevor Jackson ("Jackson Depo.") (Dkt. 46-1) Ex. C at 15:10–19; Deposition of Officer Richard Gonzales ("Gonzales Depo.") (Dkt. 46-1) Ex. D at 13:11–15. Once the Officers arrived, Scafuto pointed at Plaintiff, identifying him as the trespasser and telling the Officers that he wanted Plaintiff arrested. Deposition of Michael Scafuto ("Scafuto Depo.") (Dkt. 46-1) Ex. B at 73:17–74:10; SDF ¶ 5. Plaintiff maintains that he never trespassed on Scafuto's property but had in fact been speaking to Scafuto from a public alleyway about a note that Scafuto had placed on York's car, threatening to tow the car because it was illegally parked. First Amended Complaint ("FAC") (Dkt. 36) ¶¶ 15–20.

---

[1] Unless indicated otherwise, to the extent any of these facts are disputed, the Court concludes they are not material to the disposition of the Motion. Further, to the extent the Court relies on evidence to which the parties have objected, the Court has considered and overruled those objections. As to any remaining objections, the Court finds it unnecessary to rule on them because the Court does not rely on the disputed evidence.

After Scafuto identified Plaintiff, Officer Gonzales approached Plaintiff and asked to speak with him. Defendants' Statement of Uncontroverted Facts ("SUF") (Dkt. 47) ¶ 6; Combined Video (Dkt. 46-1) Ex. J at 0:00. Officer Gonzalez asked to see Plaintiff's identification, which Plaintiff explained he had left in York's apartment. Plaintiff Depo. at 58:2–17; Gonzalez Depo. at 21:17–24. Plaintiff then went to York's apartment to retrieve his identification information. Plaintiff Depo. at 60:3–5, Gonzales Depo. at 21:25–22:2. According to Plaintiff, Officer Gonzalez requested that he go to York's apartment to retrieve his identification. Plaintiff Depo. at 60:1–2. However, Officer Gonzales maintains that he asked Plaintiff to stay put. Gonzales Depo. at 21:25–22:2. While Plaintiff was walking to York's apartment, Cofell emerged from her home and took Plaintiff back to Officer Gonzales. SUF ¶ 9; SDF ¶ 9. After some conversation between the three of them, Plaintiff began to walk back to Cofell's apartment. SUF ¶¶ 12, 14; SDF ¶¶ 12; Combined Video at 3:15. Officer Gonzalez motioned for Plaintiff to remain, telling him to "Come hang out here, man." Combined Video at 3:15; SDF ¶ 13. Plaintiff claims not to have heard this instruction, and continued walking back to Cofell's apartment. Plaintiff Depo. at 69:1–12; SUF ¶ 14; SDF ¶ 13. At this point, Officer Jackson had finished talking to Scafuto. Jackson Depo. at 33:1–3. Both he and Officer Gonzales followed Plaintiff to Cofell's front yard, speaking briefly with a Dallas Alexander ("Alexander"), a friend of Plaintiff's. Combined Video at 4:29; Deposition of Dallas Alexander ("Alexander Depo.") (Dkt. 46-1), Ex. K at 30:14–21. Plaintiff and Cofell then went into the residence, making their way to the foyer/den beyond the front door. Plaintiff Decl. ¶ 47; SUF ¶ 21. Officer Jackson followed and ordered Plaintiff to stop, at which point Plaintiff moved into a nearby bedroom and locked the door behind him. Plaintiff Depo. at 76:23–24; Gonzales. Depo at 43:2. The parties disagree as to whether Officer Jackson was already inside the house before he ordered Plaintiff to stop. SDF ¶ 21.

Plaintiff's and Defendants' accounts differ sharply as to what ensued in the home. Plaintiff alleges that Defendants forcibly entered the bedroom and attacked him, while Defendants maintain that they were able to carry out an arrest without excessive force. FAC ¶¶ 41–47; MSJ at 4. However, for purposes of this motion, it suffices to say Plaintiff's arrest was effectuated inside the Cofell home.

Plaintiff was eventually cited for trespass, and for resisting arrest in violation of California Penal Code § 148(a)(1). SUF ¶ 27; SDF ¶ 27. HBPD Detective Timothy Emanuel ("Emanuel") investigated the citation, and recommended that Plaintiff be charged with resisting arrest, but not trespass. Declaration of Timothy Emanuel ("Emanuel Report") (Dkt. 46-1), Ex. M at 136–37. The District Attorney's office then filed a criminal complaint against Plaintiff for violation of § 148(a)(1), but the charges were dismissed "in the interest of justice" after Plaintiff agreed to counseling and to provide a DNA sample. FAC ¶¶ 54–55; SUF ¶¶ 32–33; Criminal Sentence recommendation for Terminal Disposition ("Criminal Disposition") (Dkt. 15) Ex. C.

### B.  Procedural History

Plaintiff filed their original complaint on May 31, 2018 alleging thirteen different violations of law. *See generally* Compl. (Dkt. 1). After a series of motions and joint stipulations to dismiss certain causes of action, Plaintiff filed a Notice of Appeal (Dkt. 63) on September 5, 2019. On appeal, the Plaintiff challenged this Court's grant of summary judgment on two § 1983 claims, one claim of trespass, and one claim for false imprisonment. Mot. at 8. The Ninth Circuit affirmed this Court's grant of summary judgment on all but the false imprisonment claim, which the Circuit remanded. *See generally Gonzalez v. City of Huntington Beach*, 2021 WL 321070.

After the Ninth Circuit's decision, the only remaining cause of action was that for false imprisonment. The Defendant moved for summary judgment on that issue on April 26, 2021 (Dkt. 79). Plaintiff filed its opposition ("opp'n.") (Dkt. 85) on May 17, 2021, and Defendant replied on May 24, 2021. (Dkt. 86).

### II.  Legal Standard

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is to be granted cautiously, with due respect for a party's right to have its factually grounded claims and defenses tried to a jury. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A court must view the facts and draw inferences in the manner most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1992); *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1161 (9th Cir. 1992). The moving party bears the initial burden of demonstrating the

absence of a genuine issue of material fact for trial, but it need not disprove the other party's case. *Celotex*, 477 U.S. at 323. When the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden by pointing out that the non-moving party has failed to present any genuine issue of material fact as to an essential element of its case. *See Musick v. Burke*, 913 F.2d 1390, 1394 (9th Cir. 1990).

Once the moving party meets its burden, the burden shifts to the opposing party to set out specific material facts showing a genuine issue for trial. *See Liberty Lobby*, 477 U.S. at 248-49. A "material fact" is one which "might affect the outcome of the suit under the governing law." *Id.* at 248. A party cannot create a genuine issue of material fact simply by making assertions in its legal papers. *S.A. Empresa de Viacao Aerea Rio Grandense v. Walter Kidde & Co., Inc.*, 690 F.2d 1235, 1238 (9th Cir. 1982). Rather, there must be specific, admissible evidence identifying the basis for the dispute. *See id.* The Court need not "comb the record" looking for other evidence; it is only required to consider evidence set forth in the moving and opposing papers and the portions of the record cited therein. Fed. R. Civ. P. 56(c)(3); *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001). The Supreme Court has held that "[t]he mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for [the opposing party]." *Liberty Lobby*, 477 U.S. at 252.

### III. Discussion

Under California tort law, false arrest is not an independent tort but "is merely one way of committing false imprisonment." *Collins v. City & County of San Francisco*, 50 Cal. App. 3d 671, 673 (1975). False imprisonment is the "unlawful violation of the personal liberty of another." *Asgari v. City of Los Angeles*, 15 Cal. 4th 744, 757 (1997).

"Warrantless arrests within the home," even if supported by probable cause, "are unreasonable unless there are exigent circumstances sufficient to justify dispensing with the warrant requirement." *People v. Ramey*, 16 Cal. 3d 263, 270 (1976). Therefore, all arrests,

1  absent exigent circumstances, effectuated within the home are unlawful. Since their arrest is
2  unlawful, the arrestee has a colorable a false arrest claim.

3        Here, it is undisputed the officers did not have a warrant for Plaintiff's arrest at the time
4  Officers Gonzales and Jackson arrested him in Cofell's home. Additionally, the Ninth Circuit
5  has already held there were no exigent circumstances justifying warrantless entry into the Cofell
6  home to effectuate an arrest. *Gonzalez*, 2021 WL 321070 at 6.

7        Therefore, this Motion turns on whether the Cofell residence was Plaintiff's home. With
8  respect to this issue, the Court finds the Defendant is not entitled to judgment as a matter of law
9  based on the undisputed facts.

10       Defendant posits there is not genuine factual dispute around where Plaintiff resided
11 because it is undisputed Plaintiff does not have a possessory interest in the Cofell home. Reply
12 at 4. Their argument goes: if the Plaintiff has no possessory interest, he cannot be at home there.
13 If he cannot be at home there, he can be lawfully arrested there without a warrant, so long as
14 there is probable cause. Since there was probable cause, the arrest was lawful. Since the arrest
15 was lawful, Plaintiff's false arrest claim fails as a matter of law. QED.

16       Defendant's syllogistic understanding of sanctity of the home would provide little
17 protection indeed. Consider a college student who, like most college students, does not a
18 possessory right to their parents' home. Under defendant's theory, then, police could barge into
19 the parents' home in the middle of the night on Christmas Eve while the student is home for the
20 holidays so long as they have probable cause—just because the student does not have a property
21 right.

22       Defendant's error lies in zeroing in on one word from the *Ramey* rule—the "home"—and
23 interpreting it hyper-literally. However, *Ramey* and its progeny do not conform to such a rigid
24 interpretation. In *Ramey*, the California Supreme Court made the at-home exception to
25 warrantless arrests based on the common law axiom that "a man's home is his castle." 16 Cal.
26 3d at 272. The Court reasoned, at a minimum, this axiom must guarantee a right to enjoy the
27 privacy of one's own home without fearing a warrantless arrest. *Id*. at 275-76. Later cases have
28 made clear the mere lack of a property interest in a home is not enough to neutralize this right.

*See, e.g., People v. Stewart*, 113 Cal. App. 4th 242, 250-51 (2003) ("Capacity to claim the protection of the Fourth Amendment depends not upon a property right in the invaded place but upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place."); *People v. Moreno*, 2 Cal. App. 4th 577, 583 ("Expectations of privacy . . . need not be based on a common-law interest in real or personal property.").

For example, in *People v. Moreno*, a California appellate court ruled that a babysitter had a reasonable expectation of privacy in a home where they worked, despite their lack of a possessory right in that home. 2 Cal. App. 4th at 584. Even though the babysitter had merely a temporary, informal arrangement with the homeowners, the babysitter was a "permissive user" of the home who, at least while the homeowners were not present, had the right to exclude others from entering the house. *Id.* This was enough, according to the court, to mean the babysitter had a reasonable right of privacy in the home. *Id.* Under *Ramey*, this meant the babysitter could not be subject to a warrantless arrest there. *Id.*

The United States Supreme Court's Fourth Amendment jurisprudence has charted a similar course. In *Rakas v. Illinois*, the Court stated it would identify zones of privacy where an individual cannot be subject to warrantless arrests "either by reference to concepts of real or personal property law *or to understandings that are recognized and permitted by society*." 439 U.S. 128, 144 n.12 (1978) (emphasis added). Since *Rakas*, the Court has found an individual enjoys a right to privacy free from warrantless government invasion in many spaces where they do not have property rights. For example, the Court ruled the defendant's status as an overnight guest is alone sufficient to show that he had an expectation of privacy in the home that society is prepared to recognize as reasonable. *Minnesota v. Olson*, 495 U.S. 91 (1990). Similarly, in *Byrd v. United States*, the Court found a person in lawful possession of a rental car, even though their name was not listed on the rental agreement, enjoyed a reasonable expectation of privacy while

in the car. 138 S.Ct. 1518, 1531 (2018). As such, the defendant's person or possessions could not be subject to a warrantless seizure while in the car. *Id.*

To summarize, Defendant must show something more than Plaintiff lacked a real property right in the Cofell residence for his arrest in that residence to be lawful. In *People v. Stewart*, a California appeals court laid out a five-factor balancing test for determining whether a residence is "at home" for purposes of the *Ramey* test:

> "The pertinent factors to consider include (1) whether the defendant has a property or possessory interest in the . . . place, (2) whether he has the right to exclude others from that place; (3) whether he has exhibited a subjective expectation that the place would remain free from governmental invasion; (4) whether he took normal precautions to maintain his privacy; and (5) whether he was legitimately on the premises."

113 Cal. App. 4th 242, 250 (enumeration added).

Here, Defendant puts forth two undisputed facts regarding Plaintiff's residence: that he does not have a possessory right in the Cofell home and that he told officers he was staying at York's house on the date of his arrest. Reply at 4. Therefore, there are only uncontroverted facts pertaining to the first *Stewart* factor. Since adjudication of "one of these factors alone is insufficient to establish" a place is not an individual's home, the Court, based on the undisputed facts, cannot rule Plaintiff was not "at home" in the Cofell residence. *Stewart*, 113 Cal. App. 4th at 250. Unable to conclude this, the Court cannot conclude the arrest was unlawful. And, as such, the Defendant cannot prove Plaintiff's false arrest claim fails as a matter of law. Therefore, their motion for summary judgment is denied.

## IV. DISPOSITION

For the aforementioned reasons, the Court **DENIES** Defendant's Motion for Summary Judgment.

DATED: July 19, 2021

*/s/ David O. Carter*

DAVID O. CARTER
UNITED STATES DISTRICT JUDGE